# PRIORITY SEND

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES -- GENERAL

Case No.  EDCV 13-00786-VAP (OPx)                    Date:  August 22, 2013

Title:     MONSTER BEVERAGE CORPORATION, A DELAWARE
          CORPORATION, AND MONSTER ENERGY COMPANY, A DELAWARE
          CORPORATION -*v*- DENNIS HERRERA, IN HIS OFFICIAL CAPACITY
          AS CITY ATTORNEY OF SAN FRANCISCO
================================================================
PRESENT:        HONORABLE VIRGINIA A. PHILLIPS, U.S. DISTRICT JUDGE

         Marva Dillard                          None Present
         Courtroom Deputy                       Court Reporter

ATTORNEYS PRESENT FOR                 ATTORNEYS PRESENT FOR
PLAINTIFFS:                           DEFENDANTS:

         None                              None

PROCEEDINGS:        MINUTE ORDER GRANTING, IN PART, AND DENYING, IN
                    PART, DEFENDANT'S MOTION TO DISMISS (IN
                    CHAMBERS)

     Before the Court is a motion to dismiss filed by Defendant Dennis Herrera, in
his official capacity as City Attorney of San Francisco ("Herrera") (Doc. No. 18)
("Motion" or "Mot."). The matter came before the Court for hearing on August 19,
2013. The Court has considered the papers filed in support of, and in opposition to,
the Motion, and the arguments put forth at the hearing, and for the reasons set forth
below, the Court GRANTS, in part, and DENIES, in part, Herrera's Motion.

MINUTES FORM 11                           Initials of Deputy Clerk ___md____
CIVIL -- GEN                    Page 1

EDCV 13-00786-VAP (OPx)
MONSTER BEVERAGE CORPORATION, A DELAWARE CORPORATION, AND MONSTER ENERGY COMPANY, A DELAWARE
CORPORATION v. DENNIS HERRERA, IN HIS OFFICIAL CAPACITY AS CITY ATTORNEY OF SAN FRANCISCO
MINUTE ORDER of August 22, 2013

# I. BACKGROUND

## A.     Procedural Background

Plaintiffs Monster Beverage Corporation, and Monster Energy Company (collectively, "Monster") filed a complaint for declaratory and injunctive relief against Herrera on April 29, 2013 (Doc. No. 1) ("Complaint").  Monster alleges forth six claims for relief: (1) declaratory relief -- preemption and primary jurisdiction ("Declaratory Relief Claim"); (2) First and Fourteenth Amendment –- Compelled Speech ("Compelled Speech Claim"); (3) First and Fourteenth Amendment –- Contest-Based Speech ("Content-Based Speech Claim"); (4) First and Fourteenth Amendment –- Commercial Speech ("Commercial Speech Claim"); (5) First and Fourteenth Amendment –- Void for Vagueness as Applied ("Void for Vagueness Claim").

Herrera filed the instant Motion on June 3, 2013.  With his Motion, Herrera also filed (1) a Request for Judicial Notice (Doc. No. 20) ("Herrera RJN") with Exhibit A (Doc. No. 20-1) and (2) the Declaration of Francesca Gessner (Doc. No. 19) ("Gessner Declaration") with Exhibit A (Doc. No. 19-1).

Monster filed its Opposition on July 15, 2013 (Doc. No. 27) ("Opposition" or "Opp."), with (1) an Objection to Declaration of Francesca Gessner (Doc. No. 28) ("Monster Objection"); (2) a Request for Judicial Notice (Doc. No. 29) ("Monster RJN") with Exhibits 1-9 (Doc. No. 29-2 to 29-10); and (3) the Declaration of Claudia M. Vetesi (Doc. No. 30) ("Vetesi Declaration").

Herrera filed his reply on August 5, 2013 (Doc. No. 37) ("Reply").  With his reply, Herrera filed (1) the Declaration of Francesca Gessner (Doc. No. 38) ("Gessner Declaration II") and (2) a Request for Judicial Notice (Doc. No. 39) ("Herrera RJN II") with Exhibits 1-3 (Doc. Nos. 39-1 to 39-3).

## B.     Request for Judicial Notice

With his Motion, Herrera filed the Herrera RJN, requesting the Court take judicial notice of the complaint for injunctive relief, filed on May 6, 2013, in the matter of <u>People v. Monster Beverage Corp.</u>, San Francisco County Superior Court Case No. CGC-13-531161 (the "State Court Action") ("Herrera's Complaint").

MINUTES FORM 11                                    Initials of Deputy Clerk ___md____
CIVIL -- GEN                          Page 2

EDCV 13-00786-VAP (OPx)
MONSTER BEVERAGE CORPORATION, A DELAWARE CORPORATION, AND MONSTER ENERGY COMPANY, A DELAWARE
CORPORATION v. DENNIS HERRERA, IN HIS OFFICIAL CAPACITY AS CITY ATTORNEY OF SAN FRANCISCO
MINUTE ORDER of August 22, 2013

A court may take judicial notice of court filings and other matters of public record.  See Reyn's Pasta Bella, LLC v. Visa USA, Inc., 442 F.3d 741, 746 n.6 (9th Cir. 2006) (citing Burbank-Glendale-Pasadena Airport Auth. v. City of Burbank, 136 F.3d 1360, 1364 (9th Cir. 1998)).  Since Herrera's Complaint is a court filing, it is appropriate for judicial notice.  Accordingly, the Court GRANTS Herrera's RJN.

With his reply, Herrera filed the Herrera RJN II, requesting the Court take judicial notice of the following three exhibits: (1) Herrera's motion to remand in People of the State of California ex rel. Dennis Herrera v. Monster Beverage Corporation, No. CV13-2500-PJH (N.D. Cal.) (the "Removed State Court Action") (Doc. No. 39-1); (2) Herrera's motion for attorneys' fees in the Removed State Court Action (Doc. No. 39-2); and (3) a letter dated June 30, 2013 from Stefan Kozak, Chief Executive Officer of Red Bull North America, Inc., to the Honorable John D. Rockefeller IV and the Honorable John Thune, introduced into the public record of a hearing before the U.S. Senate Committee on Commerce, Science, and Transportation, on July 31, 2013 (Doc. No. 39-3).

The Court finds these exhibits appropriate for judicial notice.  They are judicially noticeable because they are "not subject to reasonable dispute [and] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2).  Moreover, Exhibits 1 and 2 are judicially noticeable because they are court filings.  See Reyn's Pasta Bella, 442 F.3d at 746 n.6.

Monster also filed the Monster RJN, requesting the Court take judicial notice of the following nine exhibits: (1) a letter from Herrera to Monster, dated April 24, 2013, available on Herrera's website (Doc. No. 29-2); (2) a letter from the Food and Drug Administration ("FDA") to Herrera, dated  April 19, 2013 (Doc. No. 29-3); (3) a letter from Herrera to Monster, dated April 30, 2013, available on Herrera's website (Doc. No. 29-4); (4) a news release posted on Herrera's website on April 30, 2013 (Doc. No. 29-5); (5) a news release posted on Herrera's website on May 3, 2013 (Doc. No. 29-6); (6) a news release posted on Herrera's website on March 19, 2013 (Doc. No. 29-7); (7) a public notice from the FDA announcing the FDA's investigation regarding the safety of caffeine in food products, available on the FDA's website (Doc. No. 29-

8); (8) a public notice from the Institute of Medicine of the National Academies ("IOM") announcing its two-day public workshop to discuss potential health impacts stemming from the consumption of caffeine, available on IOM's website (Doc. No. 29-9); and (9) Monster's motion to dismiss, stay, or transfer action filed in the Removed State Court Action (Doc. No. 29-10).

Exhibit 1 and Exhibits 3-7 are judicially noticeable because the information "was made publicly available by government entities [], and neither party disputes the authenticity of the websites or the accuracy of the information displayed therein." Daniels-Hall v. Nat'l Educ. Ass'n, 629 F.3d 992, 998-99 (9th Cir. 2010) (courts may take judicial notice of information posted on an official government website). Exhibits 2 and 8 are judicially noticeable because they are "not subject to reasonable dispute [and] can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b)(2). Finally, Exhibit 9 is judicially noticeable because it is a court filing. See Reyn's Pasta Bella, 442 F.3d at 746 n.6.

Accordingly, the Court GRANTS Monster's RJN.

## C.    Declaration of Francesa Gessner

Herrera filed the Gessner Declaration with his Motion and the Gessner Declaration II with his Reply.  Monster filed an objection to the Gessner Declaration on July 15, 2013 (Doc. No. 28) ("Monster Objection").  The Court finds that neither the Gessner Declaration or the Gessner Declaration II is necessary to resolve this Motion.

## D.    Factual Allegations

Monster filed the Complaint against Herrera because Herrera "threatened to seek an order enjoining [Monster] from selling [its] energy drinks as currently formulated; severely restricting what [Monster] can say on [its] product labels, in marketing materials, and elsewhere; and prescribing the manner in which [Monster] can market and sell [its] energy drinks and to whom those products may be marketed and sold."  (Compl. ¶ 1.)

EDCV 13-00786-VAP (OPx)
MONSTER BEVERAGE CORPORATION, A DELAWARE CORPORATION, AND MONSTER ENERGY COMPANY, A DELAWARE
CORPORATION v. DENNIS HERRERA, IN HIS OFFICIAL CAPACITY AS CITY ATTORNEY OF SAN FRANCISCO
MINUTE ORDER of August 22, 2013

## 1.    Necessity for Declaratory Relief

Monster alleges that an actual controversy exists because it has been "threatened with imminent law enforcement action, including the threat of injunction and substantial monetary penalties, if [Monster does] not succumb to [Herrera's] demands regarding labeling, reformulation of [its] products, and marketing." (Compl. ¶ 14.)  Herrera contacted Monster to inform it he is conducting an investigation of Monster's marketing and labeling practices, and threatened to file a lawsuit forthwith. (Id.)

Monster alleges that the controversy is ripe for adjudication because there is an "existing legal dispute between the parties regarding a discrete issue and . . . based on ongoing and prospective conduct." (Id. at ¶ 17.)

## 2.    Background

Monster has sold more than eight billion cans of Monster Energy drinks since 2002, in approximately 90 countries around the world. (Id. at ¶ 18.)  Beginning earlier this year, Monster began labeling its cans with the total amount of caffeine per eight ounce serving and per can. (Id. at ¶ 18.)

On October 31, 2012, Herrera sent Monster a letter announcing he had begun an investigation into the safety of Monster Energy drinks. (Id. at ¶ 44; see also Ex. C to Compl.)  Herrera also requested Monster provide substantiation for some of its marketing claims, including "[B]igger is better," "[Y[ou can never get too much of a good thing!," and Monster Energy drinks "deliver[] twice the buzz of a regular energy drink." (Id.)  In his letter, Herrera asserted that the caffeine levels in Monster Energy drinks far exceed the safe caffeine levels for adolescents, and that Monster encourages unsafe and irresponsible consumption of its products. (Compl. at ¶ 44; see also Ex. C to Compl.)  Herrera further stated that Monster's marketing is "expressly targeted to adolescents, as illustrated by the promotions for extreme sports, music and the Monster Girls on Monster's website, Facebook page, and sponsorships." (Compl. at ¶ 45; Ex. C to Compl.)

EDCV 13-00786-VAP (OPx)
MONSTER BEVERAGE CORPORATION, A DELAWARE CORPORATION, AND MONSTER ENERGY COMPANY, A DELAWARE
CORPORATION v. DENNIS HERRERA, IN HIS OFFICIAL CAPACITY AS CITY ATTORNEY OF SAN FRANCISCO
MINUTE ORDER of August 22, 2013

On December 10, 2012, counsel for Monster met with Herrera's representatives and discussed the scientific literature supporting Monster's claims that its energy drinks are safe.  (Id. at ¶ 46.)

On December 20, 2012, Monster sent Herrera a detailed letter following the December 10, 2012 meeting and in response to Herrera's October 31, 2012 letter. (Id. at ¶ 47; see also Ex. D to Compl.)  Monster provided information regarding the safety of its products, asserted its products comply with existing FDA regulations and guidelines, and argued that the FDA has exclusive jurisdiction to regulate energy drinks.  (Id.)

On March 19, 2013, Herrera sent a letter to the FDA regarding his pending investigation of Monster Energy drinks and other highly caffeinated energy drinks. (Compl. at ¶ 48; see also Ex. E to Compl.)  To his letter, Herrera attached a separate letter drafted by 18 scientists and public health professionals to the FDA concluding that "there is no general consensus among qualified experts that the addition of caffeine in the amounts used in energy drinks is safe under its conditions of intended use as required by the [generally recognized as safe ("GRAS")] standard."  (Id.)  The letter further stated: "On the contrary, there is evidence . . . that the caffeine levels in energy drinks poses serious potential health risks, including increased risk for serious injury or even death."  (Ex. E to Compl.)

On March 29, 2013, Herrera responded to Monster's December 20, 2012 letter.  Herrera asserted that there is insufficient evidence that the amount of caffeine in Monster Energy drinks is GRAS as required by law, and "demand[ed] that Monster take immediate steps to reformulate its products to safe caffeine levels, provide adequate warning labels, and cease promoting over-consumption."  (Compl. ¶ 49; see also Ex. F to Compl.)  Herrera further stated that "[t]o avoid litigation, the City demands that Monster immediately agree to take the following steps: [(1)] reformulate its product to lower the caffeine content to safe levels; [(2)] provide adequate warning labels; [(3)] cease promoting over-consumption in marketing; [(4)] cease use of alcohol and drug references in marketing; [and (5)] cease targeting minors.  (Compl. at ¶ 50; Ex. F to Compl.)  Herrera stated if he "does not receive an adequate response, the City will proceed to file suit forthwith."  (Id.)

EDCV 13-00786-VAP (OPx)
MONSTER BEVERAGE CORPORATION, A DELAWARE CORPORATION, AND MONSTER ENERGY COMPANY, A DELAWARE
CORPORATION v. DENNIS HERRERA, IN HIS OFFICIAL CAPACITY AS CITY ATTORNEY OF SAN FRANCISCO
MINUTE ORDER of August 22, 2013

Herrera has also "more recently demanded" that Monster comply with
additional requirements, including not featuring images of anyone under age 18 in its
marketing; not sponsoring events that feature athletes under age 18 or where more
than 20% of the attendees are likely to be under age 18; and not selling Monster
Energy drinks in 18.6 ounce and 24 ounce cans.  (Compl. at ¶ 51.)

### 3.    Monster's Claims
#### 1.    Declaratory Relief Claim
##### a.    Primary Jurisdiction

The FDA has jurisdiction to regulate the safety and labeling of energy drinks.
(Id. at ¶ 52.)  A manufacturer that has made a determination that a food ingredient is
GRAS for its intended use(s) may market that ingredient.  (Id.)  The FDA may
challenge any such determination.  (Id.)  The FDA has not challenged Monster's
determination that caffeine and other ingredients in its energy drinks are GRAS, nor
has it concluded that energy drinks have caused any of the adverse events reported
to the agency as allegedly being associated with such drinks.  (Id.)  Monster alleges
that any attempt by Herrera to act where the FDA has not acted is preempted and
barred by the doctrine of primary jurisdiction.  (Id. at ¶ 53; see also Compl. at ¶¶ 73-
75.)  Monster is entitled to a declaration that Herrera's demands are preempted and
barred by the doctrine of primary jurisdiction.  (Id. at ¶ 75.)

##### b.    Commerce Clause

Monster markets its products on a nationwide basis.  (Id. at ¶ 68.)  Monster
alleges Herrera's demands would force it to alter nationwide manufacturing and
labeling practices that comply with state and federal law, and instead create special
practices for California, or even just San Francisco.  (Id.)  Herrera's demands would
result in inconsistent manufacturing and labeling requirements across the states.
(Id. at ¶ 91.)  Monster is entitled to a declaration that Herrera's demands violate the
Commerce Clause.  (Id. at ¶ 93.)

#### 2.    Compelled Speech Claim

Monster alleges Herrera attempts to impose speech restrictions.  (Compl. at ¶
55.)  Herrera's demands would compel Monster to convey specific messages and

EDCV 13-00786-VAP (OPx)
MONSTER BEVERAGE CORPORATION, A DELAWARE CORPORATION, AND MONSTER ENERGY COMPANY, A DELAWARE
CORPORATION v. DENNIS HERRERA, IN HIS OFFICIAL CAPACITY AS CITY ATTORNEY OF SAN FRANCISCO
MINUTE ORDER of August 22, 2013

warnings on its drinks and to advocate specific positions on policy issues such as
the "safe" levels of caffeine in energy drinks, marketing to minors, and references to
alcohol and drugs in marketing.  (Id.)  Monster alleges these demands violate the
First Amendment.  (Id.; see also Compl. at ¶¶ 77-79.)

### 3.    Content-Based Speech Claim

Herrera seeks to restrict expression based on messages, ideas, subject
matter, or content.  (Compl. at ¶ 58.)  Specifically, Herrera is insisting that unless
certain conditions are satisfied, Monster must cease such expressive activities as
offering awards to student athletes.  (Id.)  Herrera's demands are allegedly
unconstitutional.  (Id.; see also Compl. at ¶¶ 81-83.)

### 4.    Commercial Speech Claim

Herrera claims that Monster's labeling and marketing are deceptive because
its energy drinks contain unsafe levels of caffeine.  (Compl. at ¶ 60.)  Herrera's
demands would affect the labeling and marketing of Monster's products, and would
restrict its commercial speech.  (Id. at ¶¶ 60-61; see also Compl. at ¶¶ 85-86.)

### 5.    Void for Vagueness Claim

Monster alleges that Herrera's demands are unconstitutionally vague as
applied to Monster.  (Compl. at ¶ 62.)  For example, Herrera insists that the law
requires Monster to reformulate its products so as not to exceed a "safe" level of
caffeine, but Herrera does not identify what that level is.  (Id.)  Similarly, Herrera
insists that Monster post "adequate warnings" on its energy drinks, but does not
state what "adequate" means.  (Id. at ¶ 63; see also Compl. at ¶¶ 88-89.)

## II. LEGAL STANDARD

### A.    Fed. R. Civ. P. 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) authorizes a party to seek dismissal
of an action for lack of subject matter jurisdiction.  "Because standing and ripeness
pertain to federal courts' subject matter jurisdiction, they are properly raised in a
Rule 12(b)(1) motion to dismiss."  Chandler v. State Farm Mut. Auto. Ins. Co., 598
F.3d 1115, 1122 (9th Cir. 2010).  In the context of a 12(b)(1) motion, the plaintiff has
the burden of establishing Article III standing to assert the claims.  Id. at 1122.  If the

EDCV 13-00786-VAP (OPx)
MONSTER BEVERAGE CORPORATION, A DELAWARE CORPORATION, AND MONSTER ENERGY COMPANY, A DELAWARE
CORPORATION v. DENNIS HERRERA, IN HIS OFFICIAL CAPACITY AS CITY ATTORNEY OF SAN FRANCISCO
MINUTE ORDER of August 22, 2013

Rule 12(b)(1) motion is premised on a "want of standing, . . . the trial . . . court[] must accept as true all material allegations of the complaint and must construe the complaint in favor of the complaining party." Warth v. Seldin, 422 U.S. 490, 501 (1975); see also Chandler, 598 F.3d at 1121 (holding that courts ruling on Rule 12(b)(1) motions based on a lack of standing "must accept as true all material allegations in the complaint," and construe the complaint in favor of the nonmovant); Bernhardt v. Cnty. of L.A., 279 F.3d 862, 869 (9th Cir. 2002).

As Article III of the United States Constitution empowers federal courts to hear only "cases" and "controversies" (see U.S. Const. art. III, § 2), matters must satisfy the various justiciability criteria, like standing, developed for determining whether a matter is a case or controversy. Demonstrating standing requires a plaintiff to show that he has suffered, or imminently will suffer, an injury that is "concrete and particularized," can be fairly traced back to the defendant's conduct, and can be redressed by a court's favorable resolution of the matter. Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992).

A suit brought by a plaintiff without Article III standing is not a "case or controversy," and an Article III federal court therefore lacks subject matter jurisdiction over the suit. Cetacean Cmty. v. Bush, 386 F.3d 1169, 1174 (9th Cir. 2004) (citing Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 101 (1998)). In that event, the suit should be dismissed under Rule 12(b)(1). Id. (citing Steel Co., 523 U.S. at 109–10; Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1140 (9th Cir. 2003); Scott v. Pasadena Unified Sch. Dist., 306 F.3d 646, 664 (9th Cir. 2002)).

**B.    Fed. R. Civ. P. 12(b)(6)**

Federal Rule of Civil Procedure 12(b)(6) allows a party to bring a motion to dismiss for failure to state a claim upon which relief can be granted. Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); Conley v. Gibson, 355 U.S. 41, 47 (1957) (holding that the Federal Rules require that a plaintiff provide "'a short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it

rests."  (quoting Fed. R. Civ. P. 8(a)(2))); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).  When evaluating a Rule 12(b)(6) motion, a court must accept all material allegations in the complaint — as well as any reasonable inferences to be drawn from them — as true and construe them in the light most favorable to the non-moving party.  See Doe v. United States, 419 F.3d 1058, 1062 (9th Cir. 2005); ARC Ecology v. U.S. Dep't of Air Force, 411 F.3d 1092, 1096 (9th Cir. 2005); Moyo v. Gomez, 32 F.3d 1382, 1384 (9th Cir. 1994).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (citations omitted).  Rather, the allegations in the complaint "must be enough to raise a right to relief above the speculative level." Id.

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; Ashcroft v. Iqbal, 556 U.S. 662, 677-78 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 556).  Recently, the Ninth Circuit clarified that (1) a complaint must "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively," and (2) "the factual allegations that are taken as true must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing the party to be subjected to the expense of discovery and continued litigation." Starr v. Baca, 652 F.3d 1202, 1216 (9th Cir. 2011).

Although the scope of review is limited to the contents of the complaint, the Court may also consider exhibits submitted with the complaint, Hal Roach Studios, Inc. v. Richard Feiner & Co., 896 F.2d 1542, 1555 n.19 (9th Cir. 1990), and "take judicial notice of matters of public record outside the pleadings," Mir v. Little Co. of Mary Hosp., 844 F.2d 646, 649 (9th Cir. 1988).

EDCV 13-00786-VAP (OPx)
MONSTER BEVERAGE CORPORATION, A DELAWARE CORPORATION, AND MONSTER ENERGY COMPANY, A DELAWARE
CORPORATION v. DENNIS HERRERA, IN HIS OFFICIAL CAPACITY AS CITY ATTORNEY OF SAN FRANCISCO
MINUTE ORDER of August 22, 2013

# III. DISCUSSION

## A.    Article III Standing and Ripeness

Herrera argues that Monster lacks standing to bring its claims, and that its claims are not ripe.  (Mot. at 5.)

### 1.    Standing

A plaintiff must satisfy "the irreducible constitutional minimum of standing" by demonstrating: (1) he has suffered an "'injury in fact' –- an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical"; (2) there is a causal connection between the injury and the conduct complained of –- that is, the injury is "fairly traceable" to the challenged action of the defendant, and not the result of the independent action of some third party not before the court; and (3) it is "likely," as opposed to merely "speculative," that the injury will be redressed by a favorable judicial decision.  Lujan v. Nat'l Wildlife Fed'n, 504 U.S. 555, 560-61 (1992).

"When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue.  If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it."  Id. at 561-62.

Monster has Article III standing to bring this action.  On March 29, 2013, Herrera sent Monster a letter demanding Monster take immediate steps to reformulate its products to "safe" caffeine levels, provide adequate warning labels, and cease promoting over-consumption.  (Compl. ¶ 49; see also Ex. F to Compl.)  Herrera further stated that, to avoid litigation, Monster needed to reformulate its products immediately, provide adequate warning labels, cease promoting over-consumption in marketing, cease use of alcohol and drug references in marketing, and cease targeting minors.  (Compl. at ¶ 50; Ex. F to Compl.)  Herrera stated that if

EDCV 13-00786-VAP (OPx)
MONSTER BEVERAGE CORPORATION, A DELAWARE CORPORATION, AND MONSTER ENERGY COMPANY, A DELAWARE
CORPORATION v. DENNIS HERRERA, IN HIS OFFICIAL CAPACITY AS CITY ATTORNEY OF SAN FRANCISCO
MINUTE ORDER of August 22, 2013

he "does not receive an adequate response, the City will proceed to file suit forthwith." (Id.)

Monster has suffered an imminent injury that is concrete and particularized. If Monster failed to comply with the demands set forth by Herrera, Herrera threatened to file a lawsuit against it. The imminent injury is directly traceable to Herrera's conduct; it is Herrera who is making demands and threatening Monster with litigation for its failure to comply. Finally, a favorable judicial decision would likely redress Monster's injury –- if the Court were to determine that Monster need not comply with the demands made by Herrera, then Monster's injury would be redressed.

Morales v. TWA, 504 U.S. 374 (1992) is instructive. In Morales, the attorneys general of seven states "made clear that they would seek to enforce the challenged portions [of certain guidelines] through suits under their respective state laws." Id. at 381. Plaintiffs were "faced with a Hobson's choice: continually violate the [state] law and expose themselves to potentially huge liability; or violate the law once as a test case and suffer the injury of obeying the law during the pendency of the proceedings and any further review." Id. Monster is faced with a similar dilemma here. Herrera urges that Monster is violating California state laws. Monster could continue allegedly violating those laws and be exposed to a lawsuit brought by Monster, or comply with Herrera's demand and suffer the injury of obeying California state laws which arguably may be preempted. See also MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 128-29 (2007) ("where threatened action by government is concerned, we do not require a plaintiff to expose himself to liability before bringing suit to challenge the basis for the threat"); LSO, Ltd. v. Stroh, 205 F.3d 1146, 1155 ("when the threatened enforcement implicates First Amendment rights, the inquiry tilts dramatically toward a finding of standing.").

Accordingly, the Court finds that Monster has Article III standing.

**2.     Ripeness**

The ripeness doctrine is "drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction." Reno v. Catholic Social Services, Inc., 509 U.S. 43, 57 n. 18 (1993). The ripeness doctrine

"is peculiarly a question of timing," (Reg'l Rail Reorg. Act Cases, 419 U.S. 102, 140 (1974)) designed "to separate matters that are premature for review because the injury is speculative and may never occur from those cases that are appropriate for federal court action." Portman v. County of Santa Clara, 995 F.2d 898, 902 (9th Cir. 1993) (internal quotation marks omitted).  Ripeness is a justiciability doctrine designed "to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to prevent the agencies from judicial interference until an administrative decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Laboratories v. Gardner, 387 U.S. 136, 148-49 (1967).  Determining whether administrative action is ripe for judicial review requires us to evaluate (1) the fitness of the issues for judicial decision and (2) the hardship to the parties of withholding court consideration.  Abbott Laboratories, 387 U.S. at 149.

Herrera argues that his letters to Monster proposed voluntary settlement terms and "simply informed Monster of the City Attorney's position as to the legality of Monster's conduct."  (Mot. at 6.)  Herrera argues that such proposals do not inflict any injury.  (Id.)  In support, Herrera cites National Park Hospitality Ass'n v. Dep't of the Interior, 538 U.S. 803, 809 (2003).  In National Park, the Court determined that a challenge to an agency's implementing regulation was not ripe because the regulation did not impose any adverse effects of a strictly legal kind, nor did it command or restrain anyone from doing anything, in particular.  Id. at 808-809.

In National Park, however, the Supreme Court stated that an action is ripe if "the scope of the controversy has been reduced to more manageable proportions, and its factual components fleshed out, by some concrete action applying the regulation to the claimant's situation in a fashion that harms or threatens to harm him."  Id. at 808.  Here, Herrera's demand letter constitutes just such a concrete action.  His letter attempted to impose certain obligations, and in the absence of Monster's compliance, threatened to sue.  The dispute here is not abstract and the lawsuit is not premature.  The issue here, whether Monster must comply with Herrera's demands pursuant to California state laws, is fit for judicial decision.  If the Court were to withhold consideration, then Monster would be forced either to comply with Herrera's demand, or be sued.

EDCV 13-00786-VAP (OPx)
MONSTER BEVERAGE CORPORATION, A DELAWARE CORPORATION, AND MONSTER ENERGY COMPANY, A DELAWARE
CORPORATION v. DENNIS HERRERA, IN HIS OFFICIAL CAPACITY AS CITY ATTORNEY OF SAN FRANCISCO
MINUTE ORDER of August 22, 2013

## B.   <u>Younger</u> Abstention

Herrera next argues the Court should abstain from this action under <u>Younger v. Harris</u>, 401 U.S. 47 (1971), in favor of an action Herrera filed against Monster, on May 6, 2013, in San Francisco Superior Court in the State Court Action.  (Mot. at 8-9.)  For <u>Younger</u> to apply, there must be an ongoing state proceeding.  <u>See</u> <u>San Jose Silicon Valley Chamber of Commerce Political Action Committee v. City of San Jose</u>, 546 F.3d 1087, 1092 (9th Cir. 2008).  There is no ongoing state proceeding here.  On June 3, 2013, the same day Herrera filed this Motion, Monster removed the State Court Action to federal court.  Therefore, the Court cannot abstain pursuant to <u>Younger</u>.[1]

## C.   Declaratory Judgment Act

Herrera argues the Court should decline to exercise jurisdiction over this action pursuant to the Declaratory Judgment Act.

"In a case of actual controversy within its jurisdiction . . . upon the filing of an appropriate pleading, [the Court] may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201.  If a lawsuit "passes constitutional and statutory muster, the district court must also be satisfied that entertaining the action is appropriate."  <u>Gov't Employees Ins. Co. v. Dizol</u>, 133 F.3d 1220, 1223 (9th Cir. 1998).  This is a discretionary determination.  (<u>Id.</u>)

Herrera argues the Court should decline exercising jurisdiction over this action because Monster is engaging in "forum shopping and gamesmanship."  (Mot. at 12.)  This argument is not well taken.  Herrera threatened to file a lawsuit against Monster if it failed to comply with its demands.  Fearing that non-compliance would result in litigation, or that compliance would injure it, Monster sought declaratory relief.  Monster filed the action in this Court because its principal place of business is in Corona, California.  (Opp. at 15.)  This is neither forum shopping or gamesmanship.

---

[1]A motion to remand, and a motion to dismiss, stay, or transfer, are both pending in the Removed State Court Action.  If the matter is remanded to state court, the Court may, at that point, determine whether abstention is appropriate.

EDCV 13-00786-VAP (OPx)
MONSTER BEVERAGE CORPORATION, A DELAWARE CORPORATION, AND MONSTER ENERGY COMPANY, A DELAWARE
CORPORATION v. DENNIS HERRERA, IN HIS OFFICIAL CAPACITY AS CITY ATTORNEY OF SAN FRANCISCO
MINUTE ORDER of August 22, 2013

## D.    Right to Petition

According to Herrera, the relief Monster seeks here violates his right to petition.

The First Amendment guarantees "the right of the people . . . to petition the Government for a redress of grievances."  U.S. Const. amend. I.  Under the Noerr-Pennington doctrine, which is derived from the First Amendment, "those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct."  Sosa v. DirectTV, Inc., 437 F.3d 923, 929 (9th Cir. 2006).

"The Noerr-Pennington doctrine arose in the antitrust context and initially reflected the Supreme Court's effort to reconcile the Sherman Act with the First Amendment Petition Clause."  Id.  Still, the Supreme Court has applied the doctrine outside the antitrust field.  Id. at 930.  The doctrine "stands for a generic rule of statutory construction, applicable to any statutory interpretation that could implicate the rights protected by the Petition Clause.  Id. at 931.

Immunity under the Noerr-Pennington doctrine applies "only to what may fairly be described as petitions, not to litigation conduct generally.  A complaint, an answer, a counterclaim and other assorted documents, in which [parties] make representations and present arguments to support their request that the court do or not do something, can be described as petitions without doing violence to the concept."  Freeman v. Lasky, Haas & Cohler, 410 F.3d 1180, 1184 (9th Cir. 2005).  Immunity, however, may also apply to presuit demand letters in certain instances.  Sosa, 437 F.3d at 936.  The doctrine applies to petitioning by government entities and officials, acting in their official capacities.  Manistee Town Ctr. v. City of Glendale, 227 F.3d 1090, 1093 (9th Cir. 2000).

The Noerr-Pennington doctrine does not apply here.  Monster does not seek to impose liability on Herrera for sending a demand letter.  Rather, Monster seeks declaratory judgment on the legal issues raised in the demand letter.

Sosa, which Herrera relies upon, is instructive.  In Sosa, defendant DirectTV, Inc. sent demand letters to certain recipients, alleging these recipients had accessed its satellite television signal illegally and would be sued if they did not settle the claims against them under the Federal Communications Act.  Sosa, 437 F.3d at 925. Plaintiffs in Sosa, recipients of DirectTV's letter, sued DirectTV claiming that its presuit demand letters violated the Racketeer Influenced and Corrupt Organizations Act ("RICO").  (Id.)  In other words, plaintiffs in Sosa challenged DirectTV's conduct in sending the letter; not whether plaintiffs could be held liable under the Federal Communications Act, which is the legal issue DirectTV raised in its letters.

Similarly here, Monster does not bring this lawsuit claiming that Herrera's demand letter violates some law.  Rather, Monster brings this lawsuit to litigate the legal issues raised in Herrera's demand letter.

Accordingly, the Noerr-Pennington doctrine is inapplicable here.

## E.   Specific Claims
### 1.   Void for Vagueness Claim
Monster alleges Herrera's demands are unconstitutionally vague as applied. (Compl. ¶ 88.)

"A law is void for vagueness 'if it is impermissibly vague in all of its applications.'"  United States v. Makowski, 120 F.3d 1078, 1080 (9th Cir. 1997) (quoting Village of Hoffman Estates v. Flipside Hoffman Estates, Inc., 455 U.S. 489, 497 (1982)).  "A statute is void for vagueness when it does not sufficiently identify the conduct that is prohibited."  United States v. Wunsch, 84 F.3d 1110, 1119 (9th Cir. 1995).

Herrera argues that its letter which "merely proposes a settlement offer cannot be 'void' because it does not 'prohibit' any conduct or provide anything that can be 'enforced.'"  (Mot. at 15 (emphasis in original).)  Herrera's argument is persuasive. While Herrera's list of demands are undeniably vague, there is no allegedly vague

law or statute at issue here.  Monster's Void for Vagueness Claim is based only on the demands made in Herrera's letter.  This is insufficient.

Accordingly, the Court GRANTS Herrera's Motion to dismiss Monster's Void for Vagueness Claim.

### 2. First Amendment Claims

Monster sets forth three others claims pursuant to the First Amendment: Compelled Speech Claim, Content-Based Speech Claim, and the Commercial Speech Claim.

Monster alleges Herrera imposes speech restrictions by demanding Monster convey specific messages and warnings on its drinks, advocate specific positions on policy issues such as the "safe" level of caffeine in energy drinks, marketing to minors, and references to alcohol and drugs in marketing.  (Compl. at ¶ 55.)

Monster further alleges that Herrera seeks to restrict expression based on messages, ideas, subject matter, or content, by insisting that, unless certain conditions are satisfied, Monster must cease such expressive activities as offering awards to student athletes.  (Compl. at ¶ 58.)

Monster also alleges that Herrera's demands affect its labeling and marketing, and would therefore restrict its commercial speech.  (Compl. at ¶¶ 60-61.)

The First Amendment affords protection to both commercial and noncommercial speech.  See Bigelow v. Virginia, 421 U.S. 809, 818 (1975).  The Supreme Court has defined commercial speech as speech that "does no more than propose a commercial transaction."  Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, 425 U.S. 748, 762 (1976); Board of Trustees of the State University of N.Y. v. Fox, 492 U.S. 469, 482 (1989).  For commercial speech to satisfy First Amendment scrutiny, it must concern lawful activity and not be misleading.  Central Hudson Gas & Elec. Corp. v. Publ. Serv. Comm'n of N.Y., 447 U.S. 557, 566 (1980).

Herrera first argues that his demand letter does not compel Monster to say, or not say, anything, and that Herrera's demand letter "has no legal force."  (Mot. at 16.)  Herrera misunderstands the nature of his demand letter.  Although Herrera's letter is not an order that Monster must comply with, Herrera threatened to sue if Monster failed to comply with his demands.  Therefore, as discussed above, Monster brought this action, in order to resolve the legal issues raised in Herrera's letter.

Herrera next argues that any potential court order that Herrera may obtain in a state court lawsuit would not, and could not, burden Monster's speech rights.  (Mot. at 16.)  Herrera argues that, if a state court were to agree with Herrera and order Monster to reform its business practices, then this order would establish that Monster's conduct is unprotected by the First Amendment.  (Id. at 17.)  On the other hand, if the state court rules in Monster's favor, then Monster will not face any restrictions on its business practices.  (Id.)  This argument, however, supports Monster's First Amendment claims in this action.  Monster seeks to reach a resolution of these issues, to determine whether Herrera's demands constitute a First Amendment violation or not.  That is the dispute in this matter.

Finally, Herrera argues that any hypothetical state court order could not burden Monster's First Amendment rights because if Monster's current product labeling and marketing practices are deceptive, then Monster has no First Amendment right to avoid providing factual warning labels on its products.  (Mot. at 17.)  While this may be accurate, this argument presupposes that Monster's current commercial speech is deceptive.  This cannot be assumed at this stage in the proceedings.

Accordingly, the Court DENIES Herrera's Motion to dismiss Monster's First Amendment Claims.

## 4.    Declaratory Relief Claim
### a.    Preemption and Primary Jurisdiction

EDCV 13-00786-VAP (OPx)
MONSTER BEVERAGE CORPORATION, A DELAWARE CORPORATION, AND MONSTER ENERGY COMPANY, A DELAWARE
CORPORATION v. DENNIS HERRERA, IN HIS OFFICIAL CAPACITY AS CITY ATTORNEY OF SAN FRANCISCO
MINUTE ORDER of August 22, 2013

Monster alleges the FDA has jurisdiction to regulate the safety and labeling of energy drinks, and that any attempt by Herrera to act where the FDA has not acted is preempted and barred by the doctrine of primary jurisdiction.  (Compl. ¶¶ 52-53.)

Herrera first argues his demand letter does not compel Monster to do anything.  As discussed above, this argument is not well-taken.  Herrera's demand letter threatens a lawsuit, unless Monster complies with specific demands.

### i.     Preemption

The Supremacy Clause of the United States Constitution empowers Congress to enact legislation that preempts state law.  See Gibson v. Ogden, 22 U.S. 1, 82 (1824); Law v. General Motors Corp., 114 F.3d 909, 909 (9th Cir. 1997).  "Federal preemption occurs when: (1) Congress enacts a statute that explicitly pre-empts state law; (2) state law actually conflicts with federal law; or (3) federal law occupies a legislative field to such an extent that it is reasonable to conclude that Congress left no room for state regulation in that field."  Chae v. SLM Corp., 593 F.3d 936, 941 (9th Cir. 2010).

There is a presumption against preemption of state laws.  See Medtronic, Inc. v. Lohr, 518 U.S. 470, 485 (1996) ("we 'start with the assumption that the historic police powers of the States were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress'"); In re Farm Raised Salmon Cases, 42 Cal. 4th 1077, 1088 (2008) (noting that consumer protection laws such as the UCL, FAL, and CLRA are within the states' historic police powers and therefore subject to the presumption against preemption).

The FDCA empowers the FDA (a) to protect public health by ensuring that "foods are safe, wholesome, sanitary, and properly labeled," 21 U.S.C. § 393(b)(2)(A); (b) to promulgate regulations implementing the statute; and (c) to enforce its regulations through administrative procedures.  See 21 C.F.R. § 7.1, et seq.  The FDCA deems a food "misbranded" if its labeling is "false or misleading in any particular."  21 U.S.C. § 343(a).

EDCV 13-00786-VAP (OPx)
MONSTER BEVERAGE CORPORATION, A DELAWARE CORPORATION, AND MONSTER ENERGY COMPANY, A DELAWARE
CORPORATION v. DENNIS HERRERA, IN HIS OFFICIAL CAPACITY AS CITY ATTORNEY OF SAN FRANCISCO
MINUTE ORDER of August 22, 2013

Congress amended the FDCA by enacting the NLEA "to 'clarify and to strengthen the Food and Drug Administration's legal authority to require nutrition labeling on foods, and to establish the circumstances under which claims may be made about the nutrients in foods.'"  Nutritional Health Alliance v. Shalala, 144 F.3d 220, 223 (2d Cir. 1998) (citing H.R. Rep. No. 101-538, at 7 (1990)).

The NLEA added an express preemption provision to the FDCA, prohibiting a state from "directly or indirectly establish[ing]" requirements for food or any labeling requirements for food that are not identical to certain requirements set forth in 21 U.S.C. § 343.  See 21 U.S.C. § 343-1(a).  21 U.S.C. § 343 sets forth when a food is deemed misbranded.

The NLEA preemption provision does not preempt state laws on the same subject; rather, "it allow[s] States to adopt requirements identical to the federal standards, which could then be enforced under state law."  Kosta v. Del Monte Corp., 2013 WL 2147413, at *6 (N.D. Cal. May 15, 2013).  Therefore, preemption only occurs when a state law claim requires a party to go beyond the FDA regulations by, for example, "includ[ing] additional or different information on a federally approved label . . . ."  Kanter v. Warner-Lambert Co., 99 Cal. App. 4th 780, 795 (2002); Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111, 1121-23 (N.D. Cal. 2010) (UCL and other state law claims that sought to impose labeling requirements not identical to FDA regulations were expressly preempted); see also Kosta, 2013 WL 2147413, at *7.  A state law claim imposes a "not identical" requirement if:

> the State requirement directly or indirectly imposes obligations or contains provisions concerning the composition or labeling of food, or concerning a food container, that (I) Are not imposed by or contained in the applicable provision [or regulation] or (ii) Differ from those specifically imposed by or contained in the applicable provision [or regulation].

21 C.F.R. § 100.1(c)(4).

Herrera made certain demands to Monster, including that Monster change the labels on its energy drinks to provide adequate warnings.  Herrera argues his claims related to product labeling seek to enforce California's Sherman Law, through

California Business and Professions Code Section 17200.  (Mot. at 20.)  According to Herrera, California's Sherman Law has expressly adopted the federal labeling requirements as its own.  (Id.)  Therefore, Herrera argues, the City seeks to enforce the same requirements imposed by federal law.  (Id.)

Herrera, however, seeks to impose more than required by the FDA.  The NLEA preemption provision allows States to adopt requirements identical to the federal standards.  See Kosta, 2013 WL 2147413, at *6.  In other words, preemption only occurs when a state law claim requires a party to go beyond the FDA regulations by, for example, "includ[ing] additional or different information on a federally approved label . . . ."  Kanter v. Warner-Lambert Co., 99 Cal. App. 4th 780, 795 (2002); Chacanaca v. Quaker Oats Co., 752 F. Supp. 2d 1111, 1121-23 (N.D. Cal. 2010).  Also, as stated above, a state law claim imposes a "not identical" requirement if it "imposes obligations or contains provisions . . . [that a]re not imposed by or contained in the applicable provision [or regulation.]"  21 C.F.R. § 100.1(c)(4).  Here, Herrera seeks to impose an obligation to post certain warnings that are not imposed by the FDA.  See 21 C.F.R. § 101.17.  Accordingly, the NLEA preemption provision applies.

Similarly, Herrera demands Monster post certain labels on its energy drinks regarding the amount of caffeine they contain.  (See, e.g., Ex. 1 to Monster RJN.)  The NLEA prohibits state regulations that are not identical with certain requirements set forth in 21 U.S.C. § 343, including 21 U.S.C. § 343(q) ("Section 343(q)").  See 21 U.S.C. § 343-1(a).  Section 343(q) governs nutrition information labels, including labels for dietary supplements.  See 21 U.S.C. § 343(q)(5)(F).  Section 343(q) states, in part:

> (I) nutrition information shall first list those dietary ingredients that are present in the product in a significant amount and for which a recommendation for daily consumption has been established by the Secretary, except that a dietary ingredient shall not be required to be listed if it is not present in a significant amount, and shall list any other dietary ingredient present and identified as having no such recommendation; (ii) the listing of dietary ingredients shall include the quantity of each such ingredient (or of a proprietary blend of such

EDCV 13-00786-VAP (OPx)
MONSTER BEVERAGE CORPORATION, A DELAWARE CORPORATION, AND MONSTER ENERGY COMPANY, A DELAWARE
CORPORATION v. DENNIS HERRERA, IN HIS OFFICIAL CAPACITY AS CITY ATTORNEY OF SAN FRANCISCO
MINUTE ORDER of August 22, 2013

ingredients) per serving.
21 U.S.C. § 343(q)(5)(F).  The FDA does not require the disclosures that Herrera
seeks to impose on Monster.  Likewise, Herrera's demands to reformulate the
energy drinks to lower the caffeine content is also not an obligation imposed by the
FDA.

Therefore, Monster has alleged sufficiently a claim for declaratory relief
pursuant to preemption.

### ii.    Primary Jurisdiction

"The primary jurisdiction doctrine allows courts to stay proceedings or to
dismiss a complaint without prejudice pending the resolution of an issue within the
special competence of an administrative agency . . . and is to be used only if a claim
involves an issue of first impression or a particularly complicated issue Congress
has committed to a regulatory agency."  Clark v. Time Warner Cable, 523 F.3d 1110,
1114 (9th Cir. 2008).  A court traditionally weighs four factors in deciding whether to
apply the primary jurisdiction doctrine: "(1) the need to resolve an issue that (2) has
been placed by Congress within the jurisdiction of an administrative body having
regulatory authority (3) pursuant to a statute that subjects an industry or activity to a
comprehensive regulatory authority that (4) requires expertise or uniformity in
administration."  Syntek Semiconductor Co. v. Microchip Tech., Inc., 307 F.3d 775,
781 (9th Cir. 2002).

"[T]he doctrine is a 'prudential' one, under which a court determines that an
otherwise cognizable claim implicates technical and policy questions that should be
addressed in the first instance by the agency with regulatory authority over the
relevant industry rather than by the judicial branch."  Clark, 523 F.3d at 1114.
"Normally, if the court concludes that the dispute which forms the basis of the action
is within the agency's primary jurisdiction, the case should be dismissed without
prejudice so that the parties may pursue their administrative remedies."  Syntek, 307
F.3d at 782; Astiana v. Hain Celestial Group., Inc., 905 F. Supp. 2d 1013, 1015-16
(N.D. Cal. 2012) (dismissing claims where the absence of FDA rules or policy
statements would require court to make an independent determination that would
"risk undercutting the FDA's expert judgments and authority")

MINUTES FORM 11                                        Initials of Deputy Clerk ___md____
CIVIL -- GEN                            Page 22

EDCV 13-00786-VAP (OPx)
MONSTER BEVERAGE CORPORATION, A DELAWARE CORPORATION, AND MONSTER ENERGY COMPANY, A DELAWARE
CORPORATION v. DENNIS HERRERA, IN HIS OFFICIAL CAPACITY AS CITY ATTORNEY OF SAN FRANCISCO
MINUTE ORDER of August 22, 2013

The Court finds that Monster has sufficiently alleged that the FDA has primary jurisdiction because the FDA has special competence over the matters at issue in this case.

First, the matters at issue here have been placed by Congress within the jurisdiction of the FDA pursuant to statute and regulations that require the FDA's expertise.  The FDA has regulatory authority over food labeling.  See 21 U.S.C. § 341, et seq.  The FDCA establishes a uniform federal scheme of food regulation to ensure that food is labeled in a manner that does not mislead consumers.  See id. Food labeling enforcement is a matter that Congress has indicated requires the FDA's expertise and uniformity in administration.

Second, the FDA has taken an interest in investigating the matters at issue here.  In fact, Herrera urges the FDA to take action regarding energy drinks and acknowledges that the FDA has launched an investigation into these products.  (See Ex. E to Compl. ("I [Herrera] urge the FDA to exercise its authority under the FDCA to protect consumers from the dangerously high levels of caffeine found in many energy drinks."); Ex. 5 to Monster RJN ("I [Herrera] applaud the FDA for its leadership in recognizing the need to address the health risks posted by highly caffeinated energy drinks"); id. ("In announcing the federal investigation . . . , [the FDA] noted that the 'proliferation of these products in the marketplace is very disturbing to us.'").

Third, it is often "technical and policy questions" that have prompted courts to invoke the primary jurisdiction doctrine.  Clark, 523 F.3d at 1114.  Here, whether Monster's energy drinks contain an unsafe amount of caffeine is a question the FDA has taken an interest in investigating and resolving.  Moreover, there are a number of policy questions at issue here.  For example, there are concerns, which Herrera has expressed, about whether Monster should be allowed to advertise and label its products in a way that appeals to a younger demographic.  These are policy questions that are best resolved by a regulatory authority.

Therefore, Monster has alleged sufficiently that the FDA has primary jurisdiction here.  Accordingly, to the extent Monster's declaratory relief claim is

EDCV 13-00786-VAP (OPx)
MONSTER BEVERAGE CORPORATION, A DELAWARE CORPORATION, AND MONSTER ENERGY COMPANY, A DELAWARE
CORPORATION v. DENNIS HERRERA, IN HIS OFFICIAL CAPACITY AS CITY ATTORNEY OF SAN FRANCISCO
MINUTE ORDER of August 22, 2013

based on the primary jurisdiction doctrine, Herrera's motion to dismiss the claim is
denied.

### b.    Commerce Clause

Monster alleges Herrera's demands would force it to alter nationwide
manufacturing and labeling practices that comply with state and federal law, and
instead create special practices for California, or even just San Francisco.  (Compl. ¶
68.)  Herrera's demands would allegedly result in inconsistent manufacturing and
labeling requirements across the states.  (Id. at ¶ 91.)

"Although the Commerce Clause is by its text an affirmative grant of power to
Congress to regulate interstate and foreign commerce, the Clause has long been
recognized as a self-executing limitation on the power of the States to enact laws
imposing substantial burdens on such commerce."  South-Central Timber Dev., Inc.,
v. Wunnicke, 467 U.S. 82, 87 (1984).  "The principal objects of dormant Commerce
Clause scrutiny are statutes that discriminate against interstate commerce."  CTS
Corp. v. Dynamics Corp. of Am., 481 U.S. 69, 87 (1987).

Here, we do not have a statute that discriminates against interstate commerce.
The Court discussed above that Herrera seeks to impose obligations that are more
onerous than those required by the FDA.  The statutes that Herrera seeks for
Monster to comply with, however, are identical to the FDA regulations.  Since the
Commerce Clause prohibits laws that interfere with or discriminate against interstate
commerce, and since the California statutes are identical, these statutes themselves
do not impose a substantial burden on interstate commerce.[2]  The Court finds that
Monster has failed to allege a claim for violation of the Commerce Clause.

——————————————

[2]In its analysis on preemption, the Court found that while the California state
laws at issue were identical to the FDA regulations, the preemption doctrine still
applied because Herrera's claims pursuant to those California state laws sought to
impose more than the FDA regulations required.  Under Monster's Commerce
Clause claim, however, the Court limits its analysis to whether the statutes
themselves (and not Herrera's claims based on those statutes) burden interstate
commerce.

EDCV 13-00786-VAP (OPx)
MONSTER BEVERAGE CORPORATION, A DELAWARE CORPORATION, AND MONSTER ENERGY COMPANY, A DELAWARE
CORPORATION v. DENNIS HERRERA, IN HIS OFFICIAL CAPACITY AS CITY ATTORNEY OF SAN FRANCISCO
MINUTE ORDER of August 22, 2013

Therefore, to the extent Monster's Declaratory Relief claim is based on a violation of
the Commerce Clause, this claim is DISMISSED.

## IV. CONCLUSION

For the reasons set forth above, the Court GRANTS, in part, and DENIES, in
part, Herrera's Motion.  The Court DISMISSES Monster's Void for Vagueness Claim
and the Declaratory Relief Claim, to the extent this claim is based on a violation of
the Commerce Clause, without leave to amend.  Herrera's Motion is denied, in all
other respects.

**IT IS SO ORDERED.**